**Blank Rome LLP**
A Pennsylvania LLP
Stephen M. Orlofsky
Jonathan M. Korn
New Jersey Resident Partners
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
(609) 750-7700 (Phone)
(609) 750-7701 (Fax)
Orlofsky@BlankRome.Com
Korn@BlankRome.Com

*Attorneys for Plaintiffs Umoe Schat Harding, Inc.
and Umoe Schat Harding AS*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UMOE SCHAT HARDING, INC. and UMOE SCHAT HARDING AS<br><br>Plaintiffs,<br><br>v.<br><br>NEW YORK MARINE AND GENERAL INSURANCE COMPANY and PATRICIA LANE SCHMALTZ,<br><br>Defendants. | Civil Action No.<br>Jury Trial Demanded |

## COMPLAINT

Plaintiffs, Umoe Schat Harding, Inc. ("SH Inc.") and Umoe Schat Harding AS ("SH AS")(collectively, "Plaintiffs") bring this complaint asserting: (1) a claim for breach of contract and declaratory judgment against defendant New York Marine and General Insurance Company ("New York Marine"), and (2) various alternative claims against defendant Patricia Lane Schmaltz ("Schmaltz").

## INTRODUCTION

This is an insurance coverage dispute, in which Plaintiffs, who manufacture and service lifeboats, seek redress as against their excess liability insurance carrier, which has denied coverage in connection with certain personal injury claims and related claims for indemnity and contribution asserted in a consolidated action before the Superior Court of New Jersey, Hudson County (the "State Court Action"). Plaintiffs seek declaratory relief and damages from Defendant New York Marine arising out of its failure to honor the contract for insurance and to reimburse Plaintiffs for all sums expended by Plaintiffs, beyond those covered by Plaintiffs' primary policy of insurance, in settling the State Court Action. In the alternative, Plaintiff seeks damages from Defendant Schmaltz, the broker who procured the policy of excess insurance on Plaintiffs' behalf.

## I.     PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff SH Inc. is a Delaware corporation with its principal place of business at 912 Highway 90 East, New Iberia, Louisiana. SH Inc. engages in the manufacture and service of lifeboats used in the marine industry.

2.     Plaintiff SH AS is a corporation organized and existing under the laws of the Kingdom of Norway. SH AS is the parent company of SH Inc., and also engages in the manufacture and service of lifeboats used in the marine industry.

3.     Defendant New York Marine is a New York corporation, having its principal place of business at 919 3d Avenue, New York, New York. New York Marine is an insurance company licensed to write business in all states except the District of Columbia, and writes insurance policies nationwide.

4. Defendant Schmaltz is a resident and domiciliary of the State of Florida, having a business address at 4401 West Kennedy Blvd., 2nd Floor, Tampa, Florida. Schmalz is an insurance agent licensed by the State of Florida, having been issued license No. A234395. She also holds herself out as an insurance broker and has placed coverage on behalf of parties outside of the State of Florida and with respect to risks outside of Florida, including risks potentially arising within the State of New Jersey.

5. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(2) and/or (a)(3) as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, there is complete diversity, and the dispute is between a citizen of a foreign state and citizens of different states.

6. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district, and because Defendant New York Marine has submitted by contract to jurisdiction in the forum of Plaintiffs' choice.

7. The Court has personal jurisdiction over Defendant New York Marine by virtue of its consent to jurisdiction in this District. The Court also has general personal jurisdiction over New York Marine, by virtue of its insurance-related activities within the state, and specific personal jurisdiction because this coverage dispute arises out of matters relating to the State of New Jersey covered by a policy of insurance underwritten by New York Marine and covering, *inter alia*, risks potentially arising within the state.

8. The Court has specific personal jurisdiction over Defendant Schmaltz because this coverage dispute arises out of matters relating to the State of New Jersey covered by a policy of insurance procured by Schmaltz and covering, *inter alia*, risks within the state, and

3

the Court may also have general jurisdiction over Schmaltz by virtue of more systematic contacts with this forum, although Plaintiff would require discovery to establish the extent of such contacts.

## II.   THE INSURANCE COVERAGE

9.   In or around late 2003, SH Inc. purchased, through Schmaltz as broker, a primary policy of commercial general liability insurance (the "Primary Policy") from Osprey Insurance, representing certain insurers with Lloyds of London, covering the period from December 31, 2003 through December 31, 2004.  The Primary Policy carried a limit of liability of $1,000,000 per occurrence.

10.   Simultaneously with the purchase of the Primary Policy, SH, Inc. purchased, also through Schmaltz as broker, a policy of excess insurance (the "Excess Policy") from Defendant New York Marine, covering the same period from December 31, 2003 through December 31, 2004.  The excess policy had a limit of $5,000,000 per occurrence in excess of primary coverage and specifically referenced the Primary Policy as the operative underlying policy of comprehensive general liability insurance.

11.   On or about April 19, 2004, SH AS was added as an additional insured under both the Primary Policy and the Excess Policy.

12.   Subject to various exclusions, the insurers under both the Primary Policy and the Excess Policy obliged themselves to pay such amounts as Plaintiffs might become obligated to pay in respect of, *inter alia*, damages arising out of personal injury claims.

13.   At the time of purchase of the two policies, Defendant Schmaltz represented to Plaintiffs that the policies were back to back, such that the Excess Policy covered the same risks as were covered by the Primary Policy, and further represented that both policies

4

were appropriate instruments for the protection of the Plaintiffs in connection with their business activities, which were known to Schmaltz to be the manufacture and service of lifeboats used in the marine industry.

### III.    THE FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

14.    On or about September 7, 2004, a lifeboat manufactured by SH AS and previously serviced by SH Inc. (the "Lifeboat") was involved in an accident (the "Accident"). Specifically, during a training exercise, the Lifeboat, which at the time was occupied by several seamen, fell some 65 feet to the water, and, as a result, certain of the seamen suffered injuries.

15.    At the time of the Accident, the Lifeboat was one of the lifesaving devices aboard the cruise ship EMPRESS OF THE SEAS, which was then owned by Royal Caribbean Cruise Lines ("RCCL") and which then had its home port in Bayonne, New Jersey.

16.    Plaintiffs provided notice of the Accident to Schmaltz in 2004, and Schmaltz represented at the time that all insurers would be placed on notice by her.

17.    Two years later, in July 2006, one of the seamen, Alexander Razo ("Razo"), and his wife Cielo Razo, brought suit against Plaintiffs in the Superior Court of New Jersey, Hudson County.  A separate suit was brought by seaman Delroy Bennett ("Bennett") in the same court and was consolidated for trial with the Razos' action.

18.    In the fall of 2006, shortly after being served with complaints by the Razos and Bennett, Plaintiffs provided Schmaltz with copies of those complaints, and Schmaltz again represented that all insurers would be placed on notice by her.

19.     Thereafter, on various occasions, Schmaltz assured Plaintiffs that all insurers had been placed on notice and Plaintiffs relied upon such representations and therefore made no efforts to contact directly the insurers underwriting either the Primary Policy or the Excess Policy.

20.     In the context of the consolidated actions brought by the Razos and Bennett, Plaintiffs brought a third party complaint against RCCL for contribution and indemnity, alleging, *inter alia*, that failures in training and maintenance by RCCL were the cause of the injuries sustained by Razo and Bennett.  RCCL in turn counterclaimed for indemnity and contribution in respect of claims previously paid by RCCL to seamen other than Razo and Bennett who had allegedly been injured in the Accident.

21.     Consolidated trial of the claims of Razo and Bennett, as well as the claims as between Plaintiffs and RCCL (collectively, as referenced above, the "State Court Action"), was scheduled to begin on Monday, July 26, 2010, although a motion to sever the claims between Plaintiffs and RCCL, which had been filed by counsel for Razo and Bennett, was scheduled to be heard first, on Friday, July 23, 2010.

22.     With the trial and motion hearing approaching, Plaintiffs pressed their brokers to ensure the support of the insurers under both the Primary Policy and the Excess Policy to fund a settlement of all claims prior to trial.

23.     In the morning of July 22, 2010, a representative of the insurer under the Primary Policy tendered the limits of the Primary Policy in support of the settlement effort.

24.     At approximately 3 p.m. in the afternoon of July 22, 2010, however, a representative of the insurer under the Excess Policy issued a letter, denying coverage under the Excess Policy.

6

25.     The reasons given for denial of cover under the Excess Policy were: (A) that the excess insurer ostensibly had not received notice of the claim until July 14, 2010, in violation of the "Notice of Occurrence" clause of the Excess Policy ; (B) that the excess insurer had not been given the opportunity to participate in the defense of the state court actions, in violation of the "Assistance and Co-operation" clause of the Excess Policy; (C) that coverage for the claim might be excluded by that provision of the Excess Policy excluding coverage for loss arising out of "mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any assured . . . "; (D) that the claim might also be excluded by that provision of the Excess Policy excluding coverage for loss arising out as arising out of "activity as a shiprepairer or shipbuilder"; and (E) that claims for punitive damages would be excluded in any event.

26.     Faced with (A) the denial of cover by its excess insurer, (B) the impending July 23, 2010 hearing in the State Court Action on the motion to sever the claims as between Plaintiffs and RCCL, and (C) the uncertainties of the trial scheduled to commence on July 26, 2010, Plaintiffs moved quickly to settle the all outstanding claims in the State Court Action on the best possible terms and at the lowest possible dollar figure and, by the early evening of July 22, 2010, concluded a binding settlement with all parties in the New Jersey state court actions, including Razo and his wife, Bennett, and RCCL.

27.     Plaintiffs entered into the referenced settlement with the knowledge that they had no support at that time from the insurer under the Excess Policy, and that Plaintiffs thus would themselves have to bear the costs of settlement over and above that covered by the insurer under the Primary Policy, pending a court ruling with respect to the parties' rights and liabilities under the Excess Policy.

7

28. Plaintiffs acted as a prudent uninsured party would do under the circumstances, and, by concluding settlement at the time they did and at the level they did, exercised due diligence to limit the exposure of themselves and their insurer under the Excess Policy.

## COUNT I

### BREACH OF CONTRACT AND DECLARATORY JUDGMENT AGAINST NEW YORK MARINE

29. The allegations of paragraphs 1 through 28 are incorporated by reference as if fully set forth herein

30. New York Marine's failure to provide coverage under the Excess Policy is in violation of the contractual agreement between Plaintiffs and New York Marine.

31. New York Marine received notice of the claims asserted against Plaintiffs as soon as practicable as required by the Excess Policy.

32. In addition or in the alternative, the Excess Policy's terms call for notice to be given to New York Marine's agent (Mutual Marine Office, Inc.) "through" another party rather than directly, but those terms do not identify the party through which such notice is to be given.

33. Paragraph C at page 6 of the Excess Policy reads as follows:

> C.   NOTICE OF OCCURRENCE
>
> Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involved injuries or damages which, in the event that the Assured should be held liable, is likely to involve this policy, notice shall be sent to Mutual Marine Office, Inc. through [sic] as soon as practicable, provided, however, that failure to notify the above firm of any occurrence which at the time of its happening did not appear to give rise to claims hereunder, shall not prejudice such claims.

8

34. If notice was not in fact received by New York Marine's agent (Mutual Marine Office, Inc.), Plaintiffs and their representatives provided notice "through" the persons and entities who it would be logical to assume were the persons or entities through whom New York Marine intended that notice should be provided and/or who it would be logical to assume would in fact provide the indirect notice to New York Marine or its agent (Mutual Marine Office, Inc.) required under the Excess Policy, such that there has been compliance with the quoted notice provision, which was drafted by New York Marine, against whom any error or ambiguity must be construed.

35. In the alternative, if it were found that New York Marine did not receive notice or constructive notice in keeping with the terms of the Excess Policy, New York Marine suffered no prejudice as a result thereof and therefore has no defense to coverage under the policy even absent such notice.

36. The claims at issue in the State Court Action are covered risks under the Excess Policy, just as they are under the Primary Policy, under which the insurer has already committed to pay the full policy limits.

37. Plaintiffs are therefore entitled to judgment in the form of a declaration that Defendant New York Marine is liable, under the terms of the Excess Policy, to reimburse Plaintiffs for all sums expended by Plaintiffs, beyond those covered by the Primary Policy, in settling the State Court Action.

900200.00001/6934773v.2

# COUNT II

### (IN THE ALTERNATIVE)
### NEGLIGENCE/MALPRACTICE AGAINST DEFENDANT SCHMALTZ

38. The allegations of paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

39. As an insurance broker engaged by Plaintiffs, Schmaltz owed Plaintiffs a duty of care.

40. Schmaltz undertook to notify all insurers of the claims at issue herein and assured Plaintiffs that such notice would be provided by her.

41. Schmaltz also undertook to use her expertise as an insurance broker to obtain appropriate coverage for Plaintiffs' business operations.

42. If it should be determined that the insurer under the Excess Policy did not receive notice in accordance with the terms of the Excess Policy then Schmaltz breached her duty of care to the Plaintiffs, and is liable to Plaintiffs for any damages caused by her negligence.

43. In addition or the alternative, if it should be found that the Excess Policy excludes either risks covered by the Primary Policy or risks that naturally arise in the course of Plaintiffs' business and of which Plaintiffs' broker would have reason to be aware, then Schmaltz breached her duty of care to the Plaintiffs, and is liable to Plaintiffs for any damages caused by her negligence.

## COUNT III

(IN THE ALTERNATIVE)
BREACH OF FIDUCIARY DUTY
AGAINST DEFENDANT SCHMALTZ

44.     The allegations of paragraphs 1 through 43 are incorporated by reference as if fully set forth herein.

45.     As an insurance broker engaged by Plaintiffs, Schmaltz owed Plaintiffs fiduciary duties.

46.     Schmaltz undertook to notify all insurers of the claims at issue herein and assured Plaintiffs that such notice would be provided by her.

47.     Schmaltz also undertook to use her expertise as an insurance broker to obtain appropriate coverage for Plaintiffs' business operations.

48.     If it should be determined that the insurer under the Excess Policy did not receive notice in accordance with the terms of the Excess Policy then Schmaltz breached her fiduciary duties to the Plaintiffs, and is liable to Plaintiffs for any damages caused by such breach.

49.     In addition or the alternative, if it should be found that the Excess Policy excludes either risks covered by the Primary Policy or risks that naturally arise in the course of Plaintiffs' business and of which Plaintiffs' broker would have reason to be aware, then Schmaltz breached her fiduciary duties to the Plaintiffs, and is liable to Plaintiffs for any damages caused by such breach.

## COUNT IV

(IN THE ALTERNATIVE)
BREACH OF VOLUNTARY UNDERTAKING
AGAINST DEFENDANT SCHMALTZ

50. The allegations of paragraphs 1 through 49 are incorporated by reference as if fully set forth herein.

51. Schmaltz undertook to notify all insurers of the claims at issue herein and assured Plaintiffs that such notice would be provided by her.

52. Schmaltz also undertook to obtain appropriate coverage for Plaintiffs' business operations.

53. If it should be determined that the insurer under the Excess Policy did not receive notice in accordance with the terms of the Excess Policy then Schmaltz breached the duty she voluntarily undertook to the Plaintiffs, and is liable to Plaintiffs for any damages caused thereby.

54. In addition or the alternative, if it should be found that the Excess Policy excludes either risks covered by the Primary Policy or risks that naturally arise in the course of Plaintiffs' business and of which Plaintiffs' broker would have reason to be aware, then Schmaltz breached the duty she voluntarily undertook to the Plaintiffs, and is liable to Plaintiffs for any damages caused thereby.

## COUNT V

(IN THE ALTERNATIVE)
BREACH OF CONTRACT
AGAINST DEFENDANT SCHMALTZ

55. The allegations of paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56. Plaintiffs entered into a contract with Schmalz, the consideration for which was the payment of a broker's commission for the placement of primary and excess insurance on the Plaintiffs' behalf.

57. Schmaltz's duties under the terms of the contract encompassed forwarding claims submitted to Schmaltz by the insureds to any insurers whose policies could be triggered by such claims, the procurement of insurance appropriate to Plaintiffs' needs, and the procurement of primary and excess cover covering identical risks.

58. If it should be determined that the insurer under the Excess Policy did not receive notice in accordance with the terms of the Excess Policy then Schmaltz breached her contract with Plaintiffs, and is liable to Plaintiffs for any damages caused by that breach.

59. In addition or the alternative, if it should be found that the Excess Policy excludes either risks covered by the Primary Policy or risks that naturally arise in the course of Plaintiffs' business and of which Plaintiffs' broker would have reason to be aware, then Schmaltz breached her contract with Plaintiffs, and is liable to Plaintiffs for any damages caused by that breach.

## COUNT VI

(IN THE ALTERNATIVE)
NEGLIGENT MISREPRESENTATION
AGAINST DEFENDANT SCHMALTZ

60. The allegations of paragraphs 1 through 59 are incorporated by reference as if fully set forth herein.

61. Schmaltz represented to Plaintiffs on various occasions that notice had been given to all insurers.

62. Schmaltz made such representation without actual knowledge of its truth or falsity.

63. Schmaltz intended that Plaintiffs should rely upon her representation and that Plaintiffs would therefore not seek to make direct contact with either the insurer under the Primary Policy or the insurer under the Excess Policy.

64. Plaintiffs relied in fact on Schmaltz's representations and thus did not seek to make direct contact with either of those insurers.

65. Schmaltz further represented to Plaintiffs that she had procured insurance appropriate to Plaintiffs' needs, and had procured excess cover protecting Plaintiffs against the same risks covered under the Primary Policy.

66. Schmaltz made such representation without actual knowledge of its truth or falsity.

67. Schmaltz intended for Plaintiffs to rely upon such representations and would thus purchase the Primary Policy and Excess Policy through her, resulting in Schmaltz earning a commission for the sale.

68. Plaintiffs in fact relied upon Schmaltz's representations as stated here, and purchased the Primary Policy and the Excess Policy in reliance on the representation that Schmaltz had procured insurance appropriate to Plaintiffs' needs, and had procured excess cover protecting Plaintiffs against the same risks covered under the Primary Policy.

69. If it should be determined that the insurer under the Excess Policy did not receive notice in accordance with the terms of the Excess Policy then Schmaltz negligently misrepresented to Plaintiffs that notice had been given to all insurers, and is liable to Plaintiffs for any damages caused thereby.

70. In addition or the alternative, if it should be found that the Excess Policy excludes either risks covered by the Primary Policy or risks that naturally arise in the course of Plaintiffs' business and of which Plaintiffs' broker would have reason to be aware, then Schmaltz negligently misrepresented that she had had procured insurance appropriate to Plaintiffs' needs, and had procured excess cover protecting Plaintiffs against the same risks covered under the Primary Policy, and is liable to Plaintiffs for any damages caused thereby.

**WHEREFORE**, SH Inc. and SH AS pray that judgment be entered in their favor and against Defendants New York Marine and Schmaltz:

(a)(i) declaring that New York Marine is liable, under the terms of the Excess Policy, to reimburse Plaintiffs for all sums expended by them, beyond those covered by Plaintiffs' primary policy of insurance, in settling the State Court Action; and adjudging New York Marine liable for compensatory damages in the amount of the sums expended by Plaintiffs, beyond those covered by Plaintiffs' primary policy of insurance, in settling the State Court Action; and/or, in the alternative

(ii) adjudging Defendant Schmaltz liable for compensatory damages in an amount to be determined at trial but sufficient to compensate Plaintiffs for any losses sustained by Plaintiffs in the event New York Marine were deemed to have no obligation to provide Plaintiffs with cover under the Excess Policy;

(b) adjudging Defendants liable for interest and costs of suit; and

(c) granting such other and further relief as the Court may deem just, equitable and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs SH Inc. and SH AS demand a jury trial on all issues so triable.

> Respectfully Submitted,
>
> **BLANK ROME LLP**
> A Pennsylvania LLP
>
> /s/ Jonathan M. Korn
> Stephen M. Orlofsky
> Jonathan M. Korn
> New Jersey Resident Partners
> 301 Carnegie Center, 3rd Floor
> Princeton, NJ 08540
> (609) 750-7700
> (609) 750-7701
>
> *Attorneys for Plaintiffs Umoe Schat Harding, Inc. and Umoe Schat Harding AS*

Dated:  July 23, 2010

OF COUNSEL:
W. Cameron Beard
The Chrysler Building
405 Lexington Avenue
New York, NY  10174
(215) 885-5000 (Phone)
(215) 885-5001 (Fax)
CBeard@BlankRome.com

900200.00001/6934773v.2

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Plaintiffs know of no other arbitration or lawsuit involving this matter, nor is any to Plaintiffs knowledge contemplated, and Plaintiffs know of no other person who should be joined at this time, except the underlying New Jersey State Court action referenced in this Complaint.

Respectfully Submitted,

**BLANK ROME LLP**
A Pennsylvania LLP

/s/ Jonathan M. Korn
Stephen M. Orlofsky
Jonathan M. Korn
New Jersey Resident Partners
301 Carnegie Center
3rd Floor
Princeton, NJ 08540
(609) 750-7700
(609) 750-7701

*Attorneys for Plaintiffs Umoe Schat Harding, Inc. and Umoe Schat Harding AS*

Dated: July 23, 2010

OF COUNSEL:
W. Cameron Beard
The Chrysler Building
405 Lexington Avenue
New York, NY  10174
(215) 885-5000 (Phone)
(215) 885-5001 (Fax)
CBeard@BlankRome.com