UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UMOE SCHAT HARDING, INC., *et al.*, | |
| Plaintiffs, | Civ. No. 10-3722-WJM |
| v. | |
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, *et al.*, | OPINION |
| | HON. WILLIAM J. MARTINI |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

     This matter comes before the Court on defendant New York Marine and General Insurance Company's ("NYMAGIC") Motion to Dismiss, Transfer, or Stay the action. Plaintiffs Umoe Schat Harding, Inc. ("SH Inc.) and Umoe Schat Harding AS ("SH AS" or collectively "Plaintiffs") and Defendant Patricia Lane Schmaltz oppose. For the reasons stated below, the motion will be denied in its entirety.

     **I.**    **Factual and Procedural Background**

     Plaintiff SH Inc. is a Delaware corporation with its principal place of business in Louisiana. Plaintiff SH AS is a Norwegian Corporation with its principal place of business in Norway. SH AS is the parent corporation of SH Inc. Both plaintiffs engage in the manufacture and service of lifeboats. Defendant NYMAGIC is a New York corporation with its principal place of business in New York. It is an insurance company licensed to conduct certain related business in every state. Defendant Schmaltz is a resident and domiciliary of Florida and has a business address in Florida. Schmaltz is an insurance broker.

     In late 2003, SH Inc. purchased through Schmaltz as broker a policy of commercial general liability insurance (the "Primary Policy") from Osprey Insurance ("Osprey"), who was acting as a representative for certain insurers with Lloyd's of London. At the same time, SH Inc. also purchased through Schmaltz as broker a policy of excess insurance (the "Excess Policy") from NYMAGIC. Both

1

policies were procured through additional intermediaries between Schmaltz and the final insurer.

In April of 2004, SH AS was added as an insured party under both policies. Plaintiffs understood the policies as providing insurance for obligations that would include damages arising out of personal injury claims. Plaintiffs further understood that the Excess Policy and the Primary Policy would cover the same risks.

On September 7, 2004, an accident occurred on a cruise vessel somewhere outside of New Jersey involving a lifeboat manufactured and serviced by SH AS. Sometime in 2004 thereafter, Plaintiffs provided notice of the accident to Schmaltz, who represented that she would place all insurers on notice.

In July 2006, an individual injured in the accident brought suit against Plaintiffs in the Superior Court of New Jersey, Hudson County. Some time thereafter, a second individual brought suit in the same court. Both actions were consolidated. Plaintiffs provided copies of the complaints to Schmaltz in the fall of 2006, and Schmaltz again represented that she would place the insurers on notice. Plaintiffs filed a third-party complaint against the owner of the cruise vessel. Communications between Plaintiffs and Schmaltz continued throughout this time, and Plaintiffs pressed Schmaltz to ensure support from the insurers to fund a settlement prior to trial. A motion to sever the claims between Plaintiffs and the cruise vessel owner was scheduled for July 23, 2010. The consolidated trial of the actions was scheduled to begin on July 26, 2010.

In the morning of July 22, 2010, Osprey tendered the limits of the Primary Policy in support of settlement. That same morning, counsel for Plaintiffs' requested from NYMAGIC settlement authority for an additional $2.25 million.

But in the afternoon of July 22, 2010, a representative of NYMAGIC issued a letter denying coverage under the Excess Policy. The letter gave the following reasons for the denial: (a) that notice of the claim had not been received until July 14, 2010, in violation of the Excess Policy; (b) NYMAGIC had not been given an opportunity to participate in the defense of the lawsuits, also in violation of the Excess Policy; and other alleged breaches of the contract that are not germane to the issue of venue.

In the evening of July 22, 2010, Plaintiffs, now aware of the denial of coverage, settled the outstanding claims from the lawsuit. On July 23, 2010, Plaintiffs filed this action against NYMAGIC and Schmaltz, claiming NYMAGIC breached its contract with Plaintiffs by denying coverage, and, in the alternative, raising various claims against Schmaltz sounding in professional malpractice and/or her failure to properly notify NYMAGIC of the claims. Also on July 23, 2010, NYMAGIC filed an action for declaratory judgment against Plaintiffs in the United States District Court for the Southern District of New York.

NYMAGIC now moves to dismiss or transfer the action under 28 U.S.C. §§ 1391 and 1406, arguing that venue in this District is improper. Alternatively, if the Court finds venue is proper, NYMAGIC moves to transfer this case to the Southern District of New York under 28 U.S.C. § 1404(a) for the convenience of the parties. Finally, in the event this Court finds venue is proper and refuses to transfer, NYMAGIC asks this Court to stay this action in favor of NYMAGIC's declaratory action in the Southern District of New York.

Plaintiffs cross-move for an injunction preventing NYMAGIC from proceeding in the action in the Southern District of New York. On October 22, 2010, the United States District Court for the Southern District of New York, Judge William H. Pauley III, stayed the declaratory judgment action pending this Court's disposition on the present motion. *New York Marine and General Ins. Co. v. Umoe Shat-Harding, Inc.* No.10-5776 (S.D.N.Y. Oct. 22, 2010) (Scheduling Order). Plaintiffs' cross-motion is thus moot.

## II.     Legal Analysis

### A. NYMAGIC did not waive its rights to challenge the venue chosen by Plaintiffs by agreeing to the Selection of Service Clause.

Plaintiffs argue that NYMAGIC waived its right to challenge venue by agreeing to the following language, the Service of Suit Clause, in the Excess Policy:

> It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder. Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States, and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

Plaintiffs have argued that because they have chosen this District by filing suit here, the Service of Suit Clause is operational and NYMAGIC must submit to the jurisdiction of this Court. Because this Court sits in diversity jurisdiction, New Jersey law guides its interpretations of the contractual language of an insurance policy. *Baughman v. U.S. Liability Ins. Co.*, 662 F. Supp. 2d 386, 393 n.2 (D.N.J. 2009). This Court will interpret the plain language of the contract. *Barclays Bank P.C. v. 865 Centennial Ave. Assocs. Ltd. P'Ship*, 26 F. Supp. 2d 712 (D.N.J. 1998) (applying New Jersey law).

The key language is NYMAGIC's agreement to "submit to the jurisdiction of any Court of competent jurisdiction." All the parties agree that this language indicates that the insurer will not challenge the personal jurisdiction of any Court in which the insured first files suit. But Plaintiffs and Schmaltz further argue that the language constitutes a waiver of any objection to the Plaintiffs' choice of venue. I do not agree.

Venue and jurisdiction are distinct concepts, and this clause speaks only of jurisdiction. By its plain terms, an agreement to "submit to jurisdiction" suggests only that a party has waived its objections to either personal or subject-matter jurisdiction or both. But because a party cannot waive the requirement of subject-matter jurisdiction, *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), the only plain reading is that NYMAGIC waived its right to object to personal jurisdiction on any grounds. Nowhere in the clause does the word "venue" appear. Nor is there language approximating or implicating the concept of venue; for example, "the Insurer agrees not to challenge the chosen forum on grounds of inconvenience." And the Third Circuit Court of Appeals' decision in *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir. 1991) does not compel a different conclusion. In *Foster*, the Court of Appeals decided that language similar to the above waived the defendant's right to remove the action from state to federal court. *Id.* at 1217. The Court of Appeals did not even discuss the issue of improper venue under 28 U.S.C. § 1391, nor did it hold that the language constituted a waiver of any objection regarding venue. A waiver of the right to remove a case is not necessarily a waiver of the right to challenge venue. Unlike issues relating to venue, removal is a jurisdictional concept, *see, e.g., Brown v. Jevic*, 575 F.3d 322, 329 (3d Cir. 2009) (discussing concept of "removal jurisdiction"), and thus it is arguably logical to find that the phrase "submit to jurisdiction" includes a waiver of the right to remove by its plain terms. But it does not follow that language that waives a right to remove also waives a right to object to venue. The only mention of venue in *Foster* is the following phrase: "Chesapeake admits that by the clause it waived any claim to inconvenience of forum." *Id.* at 1219. But the Court should not construe this off-hand statement as aggressively as Plaintiffs argue it should; the Court of Appeals did not decide the issue. And courts in both New York and New Jersey have interpreted similar language as not waiving objections to venue. *See Chubb Custom Ins. Co. v. Prudential Ins. Co. of America*, 195 N.J. 231, 243 (N.J. 2008) ("Unlike a mandatory forum selection clause provision, a service of suit clause . . . does not bar court consideration of *forum non conveniens*.") (quotation omitted); *Brooke Group Ltd. V. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (N.Y. 1996) ("[A] Service of Suit Clause generally provides no more than a consent to jurisdiction. It does not bind the parties to litigate in a particular forum,

4

or give the insured the exclusive right to choose a forum unrelated to the dispute.").

Plaintiffs argue that the contract is at least ambiguous as to whether NYMAGIC waived its right to challenge venue, and that this Court should therefore construe the contract against NYMAGIC. While it is true that New Jersey courts will construe ambiguous language in an insurance contract to reflect the reasonable expectation of the insured, *see, e.g.*, *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 254 (3d Cir. 2009) (citing *Doto v. Russo*, 140 N.J. 544 (1995)), the language at issue is not ambiguous. It does not speak to venue. Plaintiffs point to no salient authority or compelling logical argument explaining why this Court should hold that a contract that does not contain any language even implicating a waiver of a right is thereby ambiguous as to that waiver.

### B. Venue is proper in the District of New Jersey because a substantial part of the events giving rise to the cause of action against NYMAGIC occurred in New Jersey.

28 U.S.C. § 1391 provides the venues in which a suit may be filed. 28 U.S.C. § 1391(a)(2) governs the action in this case. Under Section 1391(a)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Thus, this Court must determine whether a substantial part of the events or omissions giving rise to the claim occurred in New Jersey. *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).[1]

Many of the various events or omissions Plaintiffs argue occurred in New Jersey have no bearing on whether venue is proper under Section 1391(a)(2). The fact that the cruise ship aboard which the accident happened was moored in New Jersey prior to the accident is inconsequential on its face. The argument that this action implicates facts and evidence developed in the previous New Jersey

---

[1] Plaintiffs cite *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 516 (D.N.J. 1998) to argue that in determining proper venue under Section 1391(a), this Court may consider: (1) the place of the injury; (2) the weight of defendant's contacts with the District; and (3) whether a substantial part of the events or omissions giving rise to the claim occurred in the District. But in light of other authority, I must respectfully disagree with the *Tischio* interpretation of Section 1391(a). Section 1391(a) was amended in 1990, and, prior to that time, the subsection allowed that venue was proper in the district "in which the claim arose." *See Cottman*, 36 F.2d at 294. In determining "where a claim arose," courts applied the same three-factor test applied in *Tischio*. *See, e.g.*, *Eason v. Linden Avionics, Inc.*, 706 F. Supp. 311, 329 (D.N.J. 1989). But post-amendment, the issue of contacts is no longer relevant. *See Cottman*, 36 F.2d at 294. And the place of injury factor must be subsumed into an analysis of whether a substantial part of the events or omissions occurred in the venue. Thus, post-amendment, the only proper factor for this Court to consider is whether a substantial part of the events or omissions giving rise to the claim occurred in the District of New Jersey.

litigation is also irrelevant. I can only surmise that Plaintiffs conflate Section 1404(a) convenience factors with the determination of proper venue.

But Plaintiffs are correct that the New Jersey litigation surrounding the September 2004 accident gave rise to the present cause of action against NYMAGIC. It was the litigation, which occurred in New Jersey, and the corresponding communication and settlement of that litigation, at least part of which occurred in New Jersey, that dictated Plaintiffs' need for coverage under the Excess Insurance Policy.

Whether the events surrounding the litigation and the litigation itself were a substantial part of the events giving rise to the claim against NYMAGIC must be considered in the complex factual context of this case. This case involves parties residing and operating throughout the United States and London. Any communications between NYMAGIC and Plaintiffs regarding the New Jersey litigation occurred through numerous intermediaries and their legal counsel who reside in New Jersey, London, Florida, and possibly elsewhere. Many of these communications no doubt occurred over the phone, email, or via other interstate and international methods. Some significant events, such as the decision to deny coverage, may have occurred wholly outside of New Jersey. But in such a geographically disparate case, this Court can easily consider the New Jersey litigation and communications and decisions relating thereto which may have occurred in whole or in part in New Jersey to be a substantial part of the events giving rise to Plaintiffs' claim against NYMAGIC. Thus, venue is proper under Section 1391(a)(2).

### C. Transfer under Section 1404(a) is not warranted.

NYMAGIC also asks this Court to transfer this case to the Southern District of New York under Section 1404(a). The Southern District of New York would be a proper venue for NYMAGIC and the claim against it because the decision to deny coverage occurred in New York, NYMAGIC is based in New York, and it is subject to personal jurisdiction there. But the Southern District of New York would not be a proper venue for Schmaltz and the claims against her, as she has no connection to New York and the cause of action against her arises from conduct she undertook in either Florida or New Jersey or both. This Court may not transfer a case to a venue that would be improper. *See* 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division *where it might have been brought*.") (emphasis added).

Recognizing this, NYMAGIC argues that the Court could sever the claim against it and transfer that claim to the Southern District of New York. While severance of the claim against NYMAGIC is theoretically possible, it would be

6

imprudent for the Court to do so. *See Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33-34 (3d Cir. 1993)(" [T]he court should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places.") (quotation omitted). Although the Complaint pleads claims against Schmaltz in the alternative, one issue central to claims against both Schmaltz and NYMAGIC is when and how NYMAGIC was notified and who bore responsibility for notifying NYMAGIC. The Court thus faces nearly the same problem articulated in *Sunbelt*: "[t]o grant severance here would place each defendant in the position of being able to defend by asserting the absent party's negligence." *Id.* at 34. Only here, with so many intermediaries involved, the line of blame would surely be much more complicated.

Severing the cause of action against NYMAGIC and staying the remaining proceedings in this Court would not solve this problem as Schmaltz – and any number of the third-party defendants – would likely be called as witnesses in the transferred action. And the transferee court would have to determine the facts regarding notification. Because Schmaltz and the third-party defendants would not be parties to the transferred action, they would not necessarily be precluded from relitigating many of the same issues in this Court. *See, e.g.*, 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Jurisdiction* § 4449 (2d ed. 2002) ("The basic premise of preclusion is that parties to a prior action are bound and nonparties are not bound."); *see also Schutter Candy Co. v. Stein Bros. Paper Box Co.*, 371 F.2d 340, 342 (7th cir. 1966) (holding judgment not binding on severed parties). Thus a stay would not avoid the waste of judicial and party resources and the threat of two courts reaching different outcomes that the Court of Appeals warned of in *Sunbelt*.

Even if severance were not an issue, NYMAGIC has failed to show that the 1404(a) factors compel this Court to transfer. Although Plaintiffs' choice of forum is entitled to less deference because it is not Plaintiffs' home forum, a substantial part of the events giving rise to the cause of action did occur in this district, and so the weight of this factor is not greatly diminished. *See Food Sciences Corp. v. Nagler*, No. 09-1798, 2010 WL 1186203, at *6 (D.N.J. Mar. 22, 2010). NYMAGIC has only shown that it would be slightly more convenient for it to litigate in the Southern District of New York rather than the District of New Jersey. And this slight convenience does not outweigh even the diminished weight of Plaintiffs' choice of forum.

### D. A Stay is not warranted.

The power to stay a proceeding is derived from the inherent power of a court to efficiently manage its own docket. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). "Determining whether to stay an action requires the court to balance competing interests, including whether the actions: (1) involve the same parties; (2) involve the same issues; or (3) are pending in the same court." *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535 (D.N.J. 2008) (citing *Local 478 Trucking & Allied Indus. Pension Fund v. Jayne*, 778 F. Supp. 1289, 1324 (D.N.J. 1991)). "Additionally, a court should consider whether a stay would prejudice the plaintiff and if it would further the interest of judicial economy." *Id.*

For the same reasons articulated above with regards to severance, a stay would not be in the interests of judicial economy. It would have the same ill effects as if this Court severed the cause of action against NYMAGIC and transferred it to the Southern District of New York.

## III. Conclusion

This Court denies NYMAGIC's motion to dismiss, transfer, or stay in its entirety. The Court denies without prejudice Plaintiffs' cross-motion as moot.

An appropriate order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 29, 2011.**